

FILED

NOV 2 5 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

CRAIG CUNNINGHAM, Pro-se     )

     )

    *Plaintiff*     )

     ) CIVIL ACTION NO.:  1:16-cv-01109

v.     )               )

Eastern Legal Services, Paul or Poul Hank, Karl Kepper, 33Wireless Inc, and Luis Martinez, Message Communications, Inc., Supreme Data Connections, LLC, William Adomanis, Message Communications, Inc., and Robert Mahanian

    *Defendants.*

### Plaintiff's Third Amended Complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and currently has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2. Gregory Charles Mitchell is a natural person and attorney who is licensed in both Washington DC and Virginia and can be served at 1629 K Street NW, Ste 300, Washington, DC 20006 or 140 Little Falls Street, ste 110, Falls Church Virginia, 22046.

3. Eastern Legal Services is a dba or corporate entity that was utilized by attorney Greg mitchell to place unsolicited calls to consumers including the Plaintiff.

4. Paul Hank or Poul Hank is a natural person who is the owner/manager of Eastern legal Services who can be served at 1313 Crest Ave Walnut, CA 91789.

5. Luis Martinez is a natural person who can be served at 5280 E. Beverlu Blvd.suite C-274

los Angeles, CA 90022

6.  33 Wireless Inc. is a Delaware corporation and can be served at: Incorp Services, Inc., 919 North Market Street, ste 425, Wilmington, DE 19801.

7.  Karl Kepper is a natural person that owns/controls the website easternlegalservices.com, which was provided to the Plaitiff and can be served at 1313 Crest Ave, Walnut, CA 91789.

8.  Message Communications, Inc., is a California corporation wiht a registered agent and corporate officer of Robert Manahian and can be served at 861 N. Norman Place, Los Angeles, CA 90049.

9.  Robert Mahanian is the corporate officer of Message Communications, Inc., and can be served at 861 N. Norman Place, Los Angeles, CA 90049.

10. Supreme Data Connections, LLC is a Florida Corporation operating from 4151 Lake Worth Road # 6037 in Lake Worth, FL 33461 and can be served via Registered agent and corporate manager William Adomanis at the same address.

11. William Adomanis is the corporate officer of Supreme Data Connections, LLC and can be served at 4151 Lake Worth Road, # 6037, Lake Worth, FL 33461.

### Jurisdiction

12.  Jurisdiction of this court arises as the acts happened in this county.

13. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here. Personal jurisdiction is apparent as the defendants are regularly making calls to residents in the state of Tennessee for the purpose of soliciting Tennessee residents to purchase extended car warranty policies from Palmer administrative.

## FACTUAL ALLEGATIONS

14. Eastern Legal Services was retained by Defendant Greg Mitchell, attorney at law, to promote the services of Greg Mitchell, attorney at law.

15. The Plaintiff never consented to recieve these calls and they were placed solely to solicit business for Greg Mitchell.

16. Under the TCPA as interpreted by the Federal Communications Commission, a person or entity may be laible for calls placed on its behalf, even if that person or entity didn't directly dial those calls.

17. The FCC explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations" See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd., 12391, 12397, 13 (1995)

18. Accordingy, an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

19. Greg Mitchell and Eastern Legal Services are legally responsible to ensure that calls made by Eastern Legal Services complied with the applicable telemarketing laws, even if Greg Mitchell did not physically place the calls himself. According to Greg Mitchell himself on 8/02/2016 regarding Eastern Legal Services *"They are a telemarketer that I pay to send me clients"* and again on 8/17/2016 *"I'm an attorney, the people that sent you to me are a telemarketer that I pay. They get the*

*initial payment to send me work. That's my only association with them."*

20. The calls were initiated to the Plaintiff by an automated telephone dialing system as defined by the TCPA. The pre-recorded message is a tell tale indication that the calls were initiated by an ATDS, as well as the spoofed caller ID. The calls were placed without the Plaintiff's consent and were not for any emergency purpose.

21. Additionally, the calls from Greg Mitchell directly were initiated by an automated telephone dialing system as defined by the TCPA. The calls were placed without the Plaintiff's consent and were not for any emergency purpose.

22. In 2016, the Plaintiff received multiple automated phone calls to the Plaintiff's phone which were not related to any emergency purpose and without the Plaintiff's consent. The calls were from 209-220-4187 and were to 615-348-1977, which the Plaintiff used as both a residential phone number and cell phone number during the relevant timeframe. The 209 number was spoofed caller ID and when called back went to a disconnected number. This was intentionally done by Eastern Legal Services to avoid scrutiny and mislead consumers as to who was actually calling.

23. The call contained a pre-recorded message which stated *"This is a very important message about your home loan. We have some great news for you right now. We are offering the chance to lower your monthly mortgage payment and rate as low as 2% without having to refinance, regardless of credit, income, late payments, or if you are facing foreclosure. We have a solution of your every financial problem. This is a free approval process, and it only takes a couple of minutes to see what your new payments and rate will be. Please call 321-392-0926"*

24. Defendant Eastern Legal Services uses Telemarketing to obtain individuals to sign up for loan modification services and placed calls to the Plaintiff's cell phone and residential number using an "automated telephone dialing system" as defined by the TCPA 47 USC 227(a) for telemarketing puurposes, which is a system and equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial these numbers.

25. Greg Mitchell retains third parties such as Eastern Legal Services for the purpose of getting clients for his law and loan modification practice.

26. Even after the Plaintiff notified Greg Mitchell the Plaintiff was going to sue him for violating the TCPA, Defendant Greg Mitchell still allowed for calls to the Plaintiff to be placed and again called the Plaintiff back 2 weeks later.

27. Each and every call to the Plaintiff was placed by equipment that has the capacity to store or produce telephone numbers to be called in a random or sequential manner and is otherwise defined as an automated telephone dialing system by the FCC and 47 USC 227. Each and every call to the Plaintiff was for telemarketing purposes. Each and every call was placed by Defendant Palmer or agents acting on their behalf without maintaining a do-not-call policy, without training the agents placing these calls on the use of a do-not-call list, and in violation of 46 USC 227(c)(5) via violations of 47 CFR 64.1200(d).

28. Agents of Defendant Greg Mitchell are clearly not trained regarding the existance and use of an internal do-not-call list firstly, as there is no list maintained by Defendant Palmer to be trained on. The Defendants have admitted to not having an internal do-not-call list and therefore they violate that provision by default.

This is a violation of 47 CFR 64.1200(d)

29. Even if there are third parties, like Eastern Legal services are placing calls on behalf of Defendant Greg Mitchellas the defendants have stated, Greg Mitchell and Eastern Legal Services also failed to maintain a do-not-call list by continuing to place calls to the Plaintiff after the Plaintiff sued the Defendants. This is a violation of 47 CFR 64.1200(d)

30.  Secondly, the actions of the Defendants show that they lack any sort of do-not-call training or prudent self-interest for that matter, as they continued to call the Plaintiff after the Plaintiff threatened to sue them. Any reasonable person would immediately stop calling someone that threatened to sued them as a result of illegal telemarketing calls. This is a violation of 47 CFR 64.1200(d)

31. By having calls placed on their behalf, Defendant Greg Mitchell is deemed a "seller" per FCC definitions and is therefore just as liable as the entity that is actually placing calls on their behalf.

32. By Greg Mitchell's own words, he stated to the Plaintiff that *"As I explained to you when we first talked, they are a telemarketer that I pay to send me clients. They get the initial payment."* To which the Plaintiff replied *"So you paid Eastern Legal Services the first $399?"* and Greg Mitchell replied *"Yes, sir. They are a telemarketer...Eastern Legal Services is a telemarketer, I pay them to send me clients"*

33. In this case, the defendants were seeking an upfront payment of over $399 and a final payment of $399 when the loan modification services were complete. Apparently the deal between Greg mitchell and Eastern Legal Services, was that

Greg Mitchell would pay Eastern Legal Services the first $399 as a referral fee and then Greg Mitchell would get paid the second $399.

34. The Defendants have a regular practice of using automated calls with pre-recorded messages to call consumers, including the Plaintiff and they have called multiple times. The pre-recorded messages did not identify the company making the calls, in violation of 47 USC 227(c)(5) as codified by 47 CFR 64.1200(d)(4) which requires pre-recorded messages to state the identity of the calling party.

35. By placing calls initiated by an automated telephone dialing system, without the Plaintiff's consent, the defendants violated 47 USC 227(b).

36. By placing calls with pre-recorded messages to the Plaintiff's cell phone without consent, the defendants violated 47 USC 227(b).

37. The Plaintiff alleges that all violations were willful violations of the TCPA. Additionally, the officers/owners of Eastern Legal Services and Greg Mitchell knew they were violating the law as they sought to hide the caller ID on each and every call. The company officers are the driving force for these TCPA violations by refusing to engage in reasonable practices designed to avoid TCPA violations and by encouraging their employees and 3rd party agents to place illegal telephone calls to consumers.

38. The violations of 47 USC 227(b) entitles the Plaintiff to recover $1500 per call and the violations of 47 USC 227(c)(5) entitles the Plaintiff to recover an additional $1500 per call for a total of $3,000 per call. Charvatt v NMP LLC is a leading case on the issue of TCPA damages in the 6th Circuit and the court ruled that the maximum possible damages are $3,000 per phone call under

circumstances similar to this.

39. In this case, there were at least 13 calls to the Plaintiff by Eastern Legal Service or Greg Mitchell, which violated the TCPA although the Plaintiff is in the process of obtaining additional call records to ascertain the total number of calls.

40. These calls violated the Telephone Consumer protection act, 47 USC 227 (b) by their automated nature and entitle the Plaintiff to $1500 per call in damages.

41. The calls violated the TCPA due to the defendant's failure to maintain a Do not call list, failure to train the agents on the use of a do not call list, pursuant to 47 USC 227 (c)(5) as codified by the FCC's 47 CFR 64.1200(d)(4). These are a separate category of violations entitling the Plaintiff to an additional $1500 per call. In total, the Plaintiff is entitled to recover $3000 per call.

**Robocall provider and the entity that provided the Plaintiff's cell phone to the**
**Defendants**

42. Message Communications, Inc., is a frequent TCPA violator that has been sued in a class action for violating the TCPA and fined by the FCC for violating telemarketing laws.

43. Message Communications, Inc., actually initiated the illegal calls to the Plaintiff's cell phone knowing that the calls were being illegally placed.

44. Message Communications Inc., regularly seeks out the worst of the worst in offshore and illegal telemarketers and gives them a platform and the ability to break the law on a nationwide basis.

45. In this case, Message Communications, inc called the Plaintiff on each and every call to the Plaintiff's cell phone that are complained of in this case with an

automated telephone dialing system and pre-recorded message. The Defendants had no prior express consent from the Plaintiff allowing the to call him and the calls were not related to any emergency purpose.

46. Message Communications Inc. was also directly paid by Greg Mitchell the end user for the dialing minutes that were used in this case.

47. As an entity that was paid for placing illegal calls to the Plaintiff, they are "sellers" under the TCPA and are liable under the TCPA for each and every illegal call placed to the Plaintiff per FCC rules.

48. Supreme Data Connections, LLC is a lead broker that sells lists of phone numbers to telemarketers and sold the Plaintiff's information falsely claiming that the Plaintiff was seeking a loan modification, which is not true.

49. Supreme Data Connections, LLC profits from this illegal venture with Message Communications, Inc. and as such they are a "seller" as defined by the FCC's rulemaking authority.

### CNAM Telecom service providers

50. 33Wireless Inc. operates a revenue sharing scheme designed around providing anonymity protection services for illegal telemarketers and all parties involved know are going to make illegal calls with the facilitation and support of 33Wireless Inc.

51. Luis Martinez own/control the compaines 33Wireless, Inc which collectively owns thousands phone numbers which are then given away to telemarketers.

52. Not only are the numbers given away for free, but 33WirelessTelecom actually pays the telemarketers fees for each and every telephone call placed, and the more telephone calls that are made, the more money 33Wireless makes and therefore pass on higher comissions to the telemarketers. Additionally, when providing these numbers to telemarketers, the telemarketers have the ability to alter the name that shows up, so instead of showing *"615-348-1977 Craig Cunningham"* for the caller ID, the call could show *"615-348-1977 Rachel Card Services"*

53. The way the money flows is that each time a phone call is placed that has caller ID enabled, the terminating phone company performs a look-up in a database that hold caller ID names and numbers. Each time there is a retrieval from this database, the originating phone company (33Wireless Inc) recieves compensation in the form of dip fees. These phone companies incentivise high volume calling by sharing the DIP fee revenue with the telemarketers placing the calls.

54. Most importantly, the CNAM services hide the telecom service provider information from review or public disclosure and in the Plaintiff's experience this is another key element to hide and facilitate the illegal telephone calls. For example, if I knew that a subscriber of Verizon wireless was placing illegal calls to me, I could complain to Verizon and Verizon would most likely shut that account down that is placing the offending calls. With CNAM services, subpoenas typically only go back to the entity that lists the subscriber of the CNAM services, but I have yet to see any actual phone calls being transmitted through the CNAM service provider.

55. There is very little legitimate use for these CNAM services, and they have become a haven for the *"Rachel w/card services"* scams, IRS scammers, home alarm companies, and vacation cruise companies. Look no further than the Federal Trade Comission et al v Caribbean Cruise Line, Inc., et al in the Southern District of Florida case 0:15-cv-60423-WJZ, in which the FTC brought an enforcement action against Pacific Telecom Communications Group and Fred Accuardi, one of the most prolific CNAM companies in the country that facilitated billions of telephone calls just for a single client, Caribbean Cruise Line, alone.

56. In this case, the overseas call centers utilized another notorious CNAM provider, 33 Wireless is also affiliated with CallerID4U, which is a notorious CNAM provider that provides similar material support and privacy for illegal telemarketers.

### Actual Damages

57. The Plaintiff alleges actual damages have been incurred in this case. The repeated and unwelcome phone calls constitue a common law invasion of privacy claim against the defendants as the Plaintiff has a right to be left alone and by making repeated unsolicited calls to the Plaintiff, particularly after being sued, infringes on that right to be left alone.

58. The conduct of the defendants has resulted in the intentional infliction of emotional distress to include, trouble concentrating, frustruation, inconvenience, stress, and annoyance.

59. The Plaintiff also was charged $399 in fees to his credit card as part of signing up for the services of Greg Mitchell.

## CAUSES OF ACTION:

### COUNT I

### Violations of the Telephone Consumer Protection Act (TCPA)

60. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

61. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited automated calls to the Plaintiff's cell phone. These calls violated the TCPA, 47 USC 227(c)(5) as they failed to maintain a do not call list and train their agents on the use of it, refused to add the Plaintiff to their do not call list, and failed to identify themselves in automated messages.

### COUNT II

### Violations of the Telephone Consumer Protection Act (TCPA)

62. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

63. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing automated calls without an emergency purpose to the Plaintiff's cell phone. These calls violated 47 USC 227(b)

### COUNT III

## Common Law invasion of Privacy

64.  Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

65.  The foregoing actions by the Defendants constitute multiple breaches of the Plaintiff's right to be left alone and privacy by placing automated calls without an emergency purpose to the Plaintiff's cell phone. These actions violate the Plaintiff's right to privacy.

## PRAYER FOR DAMAGES AND RELIEFS

A.   WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against Defendants

B.   Statutory damages of $3000 for each phone call

C.   Actual damages as determined at trial, plus $399 charged, plus $450 in filing fees and costs of service

D.   Pre-judgment interest from the date of the phone calls.

E.   Punitive Damages in the amount of $15,000

F.   Attorney's fees for bringing this action as incurred; and

G.   Costs of bringing this action; and

H.   For such other and further relief as the Court may deem just and proper

Respectfully submitted, November 11, 2016

Craig Cunningham, Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, TN 37211

615-348-1977